Appeal of **HERSCHEL V. JONES.**                    **Docket No. 944.**

1. There is a distinction between a gift and a payment made by one person in recognition of a moral obligation to reimburse another for a loss arising out of a business transaction in which both were associated.

2. A taxpayer who, in recognition of a moral obligation to reimburse another for the loss of his investment resulting from the failure of a partnership, of which taxpayer also was a member, delivered to such person a note in a certain sum, and, upon the latter's death, paid the amount thereof, with interest, to his executors, may deduct the amount paid as a loss "incurred in trade or business" or "incurred in a transaction entered into for profit," under section 214 (a) (4) (5) of the Revenue Act of 1918.

3. The delivery of the note, or the payment of the amount thereof to the executors, did not constitute a gift.

4. Where such note was given in 1911, without consideration between the parties and upon the understanding that the payee would never insist upon payment, and the evidence was silent as to whether or not the note was an ordinary negotiable instrument, *held*, that the taxpayer was entitled to deduct the loss sustained on account thereof from his income for 1920, the year in which the note was paid.

Submitted April 13, 1925; decided May 23, 1925.

*Paul Kieffer, Esq.*, and *Ira B. Robbins, C. P. A.*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

Before JAMES and TRAMMELL.

This is an appeal from a deficiency of $41,957.89 income tax for the year 1920.

### FINDINGS OF FACT.

The taxpayer is a resident of Minneapolis, Minn.

The sole issue involved in the appeal is the deductibility of $71,949.23, paid by the taxpayer to the executors of the estate of James J. Hill, under circumstances outlined below.

Prior to and during the year 1904, the taxpayer was engaged in the newspaper business in Minneapolis. He was especially familiar with wheat conditions in the northwest, as he had been for some years making special investigations thereof and had been writing estimates giving the amount of the probable wheat crops before the same were harvested. These estimates were regarded as valuable in the grain market.

During and prior to the year 1904, H. P. and L. T. Watson, of Minneapolis, were engaged in the grain and stock brokerage business, doing business as partners under the firm name of Watson & Co., in that city, and desired to procure the taxpayer as a member of the firm. With that end in view, James J. Hill, then president of the Great Northern Railroad Co., who also regarded the taxpayer's estimates of wheat production as important in the grain markets, purchased a one-ninth interest in the partnership of Watson & Co. for the sum of $100,000, upon condition that the taxpayer become a salaried partner of the firm at a salary of $15,000 per annum. In making this investment, Hill looked for security and reimbursement for the money advanced to his interest in Watson & Co., and did not take from the taxpayer any security on account of such investment, or regard him as in any sense liable therefor. It was further understood between Hill and the taxpayer that as part of his services he would continue the publication of estimates of wheat production as theretofore.

The agreement so entered into was carried out and the taxpayer from 1904 to 1907 was a salaried member of the partnership of Watson & Co. at the salary stipulated.

In 1907 the firm of Watson & Co. failed.

Thereafter, and during the year 1911, the taxpayer called upon Hill and stated that he felt morally obligated to assume Hill's loss occasioned by the failure of Watson & Co. Hill stated that the taxpayer owed him nothing, but as a result of the conversation, the taxpayer executed and delivered to Hill his note for a sum of $71,000, the sole consideration for which was the feeling on the part of the taxpayer that he was morally obligated to assume Hill's loss as above set forth. It was understood between Hill and the taxpayer that Hill would not press the taxpayer for payment of the note, and that

it would be renewed from time to time until the taxpayer felt able to pay it.

James J. Hill died in 1916. Among the effects of his estate was found a note renewing the original note given in 1911 by the taxpayer. The executors demanded payment of the taxpayer in 1920, and the note and interest were paid during that year in a total amount of $71,949.23.

The taxpayer kept his accounts and made his income-tax returns on the basis of cash receipts and disbursements in the year 1920. In connection with his return, he claimed as a business loss or a loss occasioned by a transaction entered into for profit the said sum of $71,949.23. This deduction the Commissioner disallowed, and from a deficiency resulting in part from such disallowance the taxpayer brings this appeal.

The sole business of the taxpayer during 1920 consisted in the ownership, management, and publication of a newspaper in Minneapolis.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on 10 days' notice, in accordance with rule 50.

### OPINION.

JAMES: The taxpayer claims that the transaction outlined above in the findings of fact is a loss sustained under the provisions of section 214 (a) of the Revenue Act of 1918, which reads in part as follows:

Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

(5) Losses sustained during the taxable year and not compensated by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *.

The taxpayer further claims that the loss was sustained in the year 1920, since in that year, and in that year alone, did he actually expend the cash incident to the failure of Watson & Co. and his voluntary assumption of the loss therein sustained by James J. Hill.

The Commissioner in denying the deduction argues that the transaction was either a purely voluntary one and a gift on the part of the taxpayer to the estate of James J. Hill, or that, if it was a loss, it was either sustained in 1911, when the note was given Hill, or in 1916, when Hill died and the note passed from the hands of the original payee into the hands of the executors of the estate.

The Commissioner also contends that the transaction can not be regarded as one arising from a business carried on by the taxpayer, since the business of Watson & Co. ended in 1907, the loss occasioned by its failure must have been sustained in that year, and the taxpayer in 1920 was engaged in the wholly different business of publishing a newspaper.

We believe this position is too narrow. Certainly the loss, if there was one, was "incurred in trade or business," and certainly also, whether incurred in business or not, the loss was one "incurred in a transaction entered into for profit."

Nor is the Commissioner's reasoning that the transaction was merely a gratuity to the estate of James J. Hill persuasive. Certainly no strained interpretation should be given to that portion of the Revenue Act of 1918 comprised in section 213 (b) (3) which excludes from gross income "the value of property acquired by gift, bequest, devise, or descent," and which by implication excludes from deductions as personal items the funds so disposed of by a donor. The distinction between a gift on the one hand and the recognition of a moral obligation arising out of a business transaction on the other may be difficult to frame in exact language, but it is not a distinction difficult of recognition when a concrete case is presented. The taxpayer in giving his note to James J. Hill or in paying that note to the executors would neither in his own mind nor in the mind of any other person be thought of as bestowing a gratuity on Hill. Because he thought he ought to, he was merely assuming a loss which Hill had sustained in a business transaction in which they were associated. As such the loss was one incurred in business or in a transaction entered into for profit within the meaning of the Revenue Act of 1918.

The difficult question presented is whether the taxpayer incurred the loss in 1911, when he voluntarily assumed the obligation to Hill and gave his note in 1916, when Hill died and the note passed into the hands of the executors, or in 1920, when the taxpayer actually paid the note in cash.

We do not believe, as contended by the taxpayer, that the test of this question rests on the narrow distinction that the taxpayer was keeping his accounts and making his returns in that year on the basis of cash receipts and disbursements. It would hardly be contended, for instance, that, if the taxpayer had surrendered to Hill in 1911 a note of some third person in payment of the obligation he then recognized, he would not have then sustained the loss which he is here claiming as a loss in 1920. But in 1911 the taxpayer did not surrender to Hill anything of value nor otherwise close the transaction between them. The note he gave was given without consideration and as between himself and Hill was nonenforceable except with his consent. The evidence is silent even as to whether the note was an ordinary negotiable instrument. As so given it was, moreover, accompanied by the definite understanding that Hill would never press for payment. Under such conditions it was at best a mere written evidence of the understanding between them.

In 1916 this note passed into the hands of the executors of the Hill estate. The taxpayer in his petition alleges that "his executors had no choice but to reduce the note to cash for the purpose of administering the estate. In the year 1920 the taxpayer was compelled to pay the face of the note." The Commissioner does not admit these allegations, but admits only that the note was paid in 1920. At the best this allegation is equivocal and is equally consistent with a moral compulsion as with a legal compulsion upon the taxpayer.

As the personal representatives of Hill, the executors stood in his shoes as the holder of the note and in their hands it was subject

to the same defenses as it would have been in the hands of Hill. *Torinus* v. *Buckham*, 29 Minn. 128; 12 N. W. 348.

Under these circumstances it is clear that the taxpayer in paying his note in 1920 for the first time made effective his loss on account of the business transaction entered into in 1904 and terminated in 1907 through the failure of Watson & Co. His loss was sustained, then, in 1920 and he should be allowed to deduct from his income for that year the amount of $71,949.23 paid at that time, and the deficiency computed by the Commisioner should be recomputed accordingly.